## GENERAL MOTORS ACCEPTANCE CORP. *v.* UNITED STATES.*

No. 574. Argued April 14, 15, 1932.—Decided May 2, 1932.

---

* Together with two other cases of the same title and *Howard Automobile Co.* v. *United States.*

*Mr. John Thomas Smith,* with whom *Mr. C. A. Lindeman* was on the brief, for General Motors Acceptance Corporation et al.

52

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Arthur W. Henderson* and *Paul D. Miller* were on the brief, for the United States.

*Mr. Joseph G. Myerson,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The facts stated in the certificate are these:

" The record presents four consolidated automobile forfeiture cases in which the same disputed legal questions are involved.

" On four different dates during July and August, 1930, the four automobiles whose forfeiture is in issue were seized at ports of entry on the Mexican border, each vehicle having liquor concealed therein. Three of the cars were seized at San Ysidro, California, and the fourth at Calexico, California. Each car was observed crossing the international boundary line from Mexico and traveling

some distance thereafter in the United States, and in each instance the concealed liquor was discovered at an official stopping place of the United States Customs Service. The seizures were effected by Customs officers.

"All four drivers of the cars were arrested. Each was charged with violations of the Tariff Act of 1930; namely unlawfully importing liquor into the United States, and knowingly concealing and facilitating the transportation of such liquor. Each indictment alleged failure to obtain a permit, failure to pay duties, and failure to make entry at the custom house. The four defendants entered pleas of guilty to the first count, which charged importation, and were sentenced by the court. In each case, the remaining count was dismissed.

"A libel of information in rem was filed by the United States attorney against each automobile, claiming its forfeiture under the provisions of Sections 3061 and 3062 of the Revised Statutes [19 U. S. C. A. 482 and 483]. In three of the cases the General Motors Acceptance Corporation intervened as owner of the attached automobiles, and in the other case the vehicle was claimed by the Howard Automobile Company. All the interveners set up proof of ownership, averred that they were innocent of any illegal acts in which the vehicles may have been involved, and prayed the court to dismiss the libels, contending that the government's sole remedy was under Section 26, Title II, of the National Prohibition Act [27 U. S. C. A. 40].

" In each case, it was stipulated that the liquor alleged to have been found in the automobile was intoxicating in fact and fit for beverage purposes. It was further stipulated, subject to the objection by the libelant that such a purported defense was incompetent, irrelevant and immaterial, that neither the seller nor the intervener had any notice of the illegal use, or intended illegal use, of the automobile.

" The government offered in evidence at the forfeiture proceedings the judgment roll, consisting of the indictment and sentence, in the criminal cases, at which, as stated above, pleas of guilty had been entered. The intervener in each case objected to the introduction of this judgment roll, on the ground that it was incompetent, irrelevant and immaterial; that no proper foundation had been laid; that the roll was not binding upon the intervener; and that it did not show that the intervener was a party to the criminal action or had notice of it. The objections were overruled and the records were admitted in evidence, to which the respective interveners duly excepted.

" Testimony of customs officers showed that the four automobiles were driven across the international boundary some distance into the United States before being searched and seized.

" The District Court entered decrees of forfeiture in all four cases, finding that each automobile ' was engaged in smuggling dutiable merchandise into the United States in violation of the customs laws thereof.' "

The four interveners having appealed to the Circuit Court of Appeals for the ninth circuit, that court certified for answer by this court the following questions (Judicial Code, § 239; 28 U. S. C., § 346):

" 1. Does Section 26 of Title II of the National Prohibition Act repeal by implication and render inoperative in liquor importation and transportation cases the forfeiture provisions of the Customs Laws, in so far as offending vehicles are concerned? Or, putting the question in another form:

" 2. Do the mandatory provisions of Section 26 of the National Prohibition Act apply when the automobile has been seized while in the act of transporting intoxicating liquor across the border and some distance into the United States?

" 3. May the government, in such a case, ignore such mandatory provisions, arrest the driver, and elect to forfeit the automobile under the customs laws?

" 4. Is the record in the criminal case wherein the driver pleaded guilty of violating the customs laws (Tariff Act of 1930) admissible in the separate forfeiture proceedings wherein the intervener is the only party appearing, for the purpose of showing unlawful importation by the automobile, or for any other purpose?"

The importation of intoxicating liquors without permit and without payment of customs duties is a violation of the tariff act and a criminal offense thereunder. This was the law under the tariff act of 1922, enacted after the adoption of the Eighteenth Amendment. Tariff Act of 1922, c. 356, § 593 b, 42 Stat. 982; U. S. C., Title 19, § 497. It is still the law under the present tariff act of 1930; U. S. C., Title 19, § 1593. True, the drivers of the cars who brought these liquors from Mexico into California were subject to prosecution under the National Prohibition Act, 27 U. S. Code, § 46. They were subject to prosecution under the tariff act also (*Callahan* v. *United States*, 285 U. S. 515), and under that act they were indicted and convicted.

The appellants would have us hold that prosecution of the offender may be based at the election of the Government either on the one act or on the other, but that forfeiture of the implements used in his offending may be based on only one of them. The consequence of such a holding would be to withdraw from the tariff acts remedies and sanctions existing for the better part of a century. Forfeiture of vehicles bearing smuggled goods is one of the time-honored methods adopted by the Government for the repression of the crime of smuggling. The provisions of the Revised Statutes, §§ 3061 and 3062, which carried forward the provisions of earlier acts (Act of July 18, 1866, c. 201, 14 Stat. 178, § 3), have in turn been

carried forward into the United States Code. U. S. Code, Title 19, §§ 482, 483. By implication, if not in express terms, they were recognized as law in the Tariff Act of 1922, which declares it to be the duty of any customs agent who has made seizure of a vehicle for violation of the customs law to turn the vessel over to the collector of the district (Tariff Act of 1922, c. 356, § 602, 42 Stat. 984; U. S. Code, Title 19, § 509). They are recognized by like provisions in the Tariff Act of 1930. Act of 1930, c. 497, § 602, 46 Stat 754; U. S. Code, Title 19, § 1602. Indeed the same implication persists in the prohibition law itself, or in acts connected with it. By section 1 of the act of March 3, 1925, c. 438, 43 Stat. 1116; U. S. Code, Title 27, § 41, " any vessel or vehicle summarily forfeited to the United States for violation of the customs laws, may, in the discretion of the Secretary of the Treasury, under such regulations as he may prescribe, be taken and used for the enforcement of the provisions of this title [i. e., the title, Intoxicating Liquors] in lieu of the sale thereof as provided by law " (cf. 27 U. S. Code, § 42). Certain it is therefore that vehicles carrying smuggled merchandise other than intoxicating liquors may still be seized and forfeited under the provisions of the tariff acts and those of the Revised Statutes ancillary thereto. The forfeiture may be enforced even against innocent owners, though the Secretary of the Treasury may remit it, upon such terms as he deems reasonable, if satisfied that there was neither wilful negligence nor intent to violate the law. R. S. § 3078; Tariff Acts of 1922 and 1930, §§ 613, 618. The penalty is at times a hard one, but it is imposed by the statute in terms too clear to be misread. Beyond all room for question, the owner of a vehicle bearing smuggled merchandise runs the risk of forfeiture, subject to remission by the grace of an administrative officer, where the merchandise is medicine or wheat or drygoods or machinery, subjects of legitimate trade upon payment of the lawful duties. The argu-

ment for the interveners is that the intention of Congress was to make the risk a lighter one where the trade is wholly illegitimate, i. e., where the merchandise smuggled consists of intoxicating liquors. They tell us that perhaps a forfeiture under the tariff acts will be permitted when what is laden in the vehicle is partly intoxicating liquor and partly something else. Cf. *Commercial Credit Co.* v. *United States,* 53 F. (2d) 977, 978, 979. They insist, however, that the remedy under those acts must be held to be excluded when liquor and liquor only is the subject matter of the carriage.

Section 26 of the National Prohibition Act (41 Stat. 305, 315; U. S. C., Title 27, § 40), which is quoted in the margin,* is said to lead to that bizarre result. We think its purpose is misread when such a meaning is ascribed to it.

* " When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or aircraft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being

Section 26 of the National Prohibition Act is not directed against smuggling, though the conduct that it does cover may be an incident of smuggling. The Eighteenth Amendment distinguishes the importation of intoxicating liquors into the United States from their transportation within, or their exportation from, the United States, just as it distinguishes each of these activities from manufacture and from sale. The National Prohibition Act maintains the same distinction. Sections 3061 and 3062 of the Revised Statutes are aimed at importation from without the United States, and not at transportation within. Section 26 of the National Prohibition Act is aimed at transportation within, and not at importation from without. We do not mean that the Government may not separate the transaction into its criminal components, and prosecute or forfeit, according to its choice, for the one constituent or for the other. Cf. *Callahan* v. *United States, supra.* It may elect to seize under the prohibition act for wrongful transportation (ignoring the preliminary or later acts of importation or exportation), and in that event the prosecution must proceed on the same basis. Cf. *Port Gardner Co.* v. *United States,* 272 U. S. 564; *Commercial Credit Co.* v. *United States,* 276 U. S. 226, 231; *Richbourg Motor Co.* v. *United States,* 281 U. S. 528. If the seizure is for transportation only, the owner of the vehicle will have whatever protection comes from § 26, and may reclaim what has been taken if he has acted in good faith. Restitution in such circumstances will be granted as of right, and not by an act of grace as it is where the seizure has been for evasion of the customs.

bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the Treasury of the United States as miscellaneous receipts. All liens against property sold under the provisions of this section shall be transferred from the property to the proceeds of the sale of the property. . . ."

Neither owner nor offender, however, has the privilege of choice between forfeiture upon the footing of illegal transportation and forfeiture upon the footing of a smuggled importation. The choice is for the Government.

We are told that this conclusion is inconsistent with *Richbourg Motor Co.* v. *United States, supra,* where seizure under another section of the Revised Statutes (§ 3450) was held to be excluded. The section there considered had no relation to the customs. It had been adopted as an internal revenue law many years before the National Prohibition Act, at a time when the sale of intoxicating liquors for beverage purposes was still a lawful business. By its terms there might be a forfeiture of a vessel or other means of conveyance which had been used to remove goods or commodities with intent to defraud the United States of a tax imposed thereon. This provision was held to have been superseded in the circumstances there disclosed by the forfeiture provisions in the act prohibiting the transportation of intoxicating liquors. National Prohibition Act, § 26. We are unwilling to extend the ruling to a situation like the one at hand. Two grounds of distinction mark the limits of extension. The first is that in the *Richbourg Motor Company* case, the operator of the automobile was arrested at the time of the seizure and arraigned before a United States Commissioner on a charge of illegal transportation of intoxicating liquors. There was a clear election to go forward under the provisions of the prohibition act, and not under any other. Section 26 is explicit in its requirement that the officer seizing the vehicle under the authority of that section shall at once proceed against the person arrested " under the provisions of this title." By parity of reasoning the court held that when there has been arrest and seizure under § 26 because of wrongful transportation, the forfeiture of what has been seized must go forward on the same footing. Cf. *Commercial Credit Co.* v. *United*

*States,* 276 U. S. 226, 231; *United States* v. *One Ford Coupe,* 272 U. S. 321, 325. There is, however, a second ground of distinction that is independent of the conduct of the officer discovering the offense. It has relation to the difference between § 3450 of the Revised Statutes on the one hand and §§ 3061 and 3062 on the other in respect of the wrong to be redressed. The act of removal from one place within the United States to another with intent to evade the tax upon spirituous liquors is one more nearly identical with that of transportation within the United States in violation of the prohibition law than is a wrongful importation in evasion of the customs. The bond of integration is closer and more intimate. Cf. *United States* v. *American Motor Boat K–1231,* 54 F. (2d) 502, 505. Removal from one place within the United States to another in order to evade a tax is differentiated from unlawful transportation by the quality of the intent, and not by anything else. Importation is differentiated also by the nature of the act.

To refuse to give heed to these distinctions will lead us into a morass of practical difficulties as well as doctrinal refinements. If forfeiture of a vehicle seized in the course of importation must always be under § 26, and not under other statutes, then the smuggler arrested at the same time must always be prosecuted under the prohibition act, and never for the smuggling, since seizure under § 26 must be followed, as we have seen, by prosecution of the arrested person under that title and no other. We cannot bring ourselves to believe that Congress had in view the creation of so great a breach in historic remedies and sanctions. Cf. *United States* v. *American Motor Boat K–1231, supra.* Derangement of a system thus rooted in tradition is not to be inferred from a section aimed upon its face at transportation within the United States and not at importation from without. Cf. *Maul* v. *United States,* 274 U. S. 501, 508. Repeals by implication are

not favored (*Henderson's Tobacco*, 11 Wall. 652; *United States* v. *Tynen*, 11 Wall. 88, 92), and least of all where inveterate usage forbids the implication. Indeed, the breach, if we once allow it, will hardly be confined within the ramparts of the acts that regulate the duties upon imports. If a forfeiture under the customs laws is forbidden where there has been an unlawful importation of intoxicating liquors, we shall have difficulty in upholding a forfeiture where there has been a violation of the navigation laws or other cognate statutes. Already the net of these complexities has entangled the decisions. Cf. *The Ruth Mildred, post.* p. 67, and *General Import & Export Co.* v. *United States, post,* p. 70. Courts accepting the conclusion that the customs forfeitures are ended in respect of intoxicating liquors have been unable to extricate themselves from the conclusion that forfeitures under the navigation acts have fallen at the same time. A halt must be called before the tangle is so intricate that it can no longer be unraveled.

We hold, then, that *Richbourg Motor Co.* v. *United States, supra,* does not rule the case at hand. The question is one as to which the decisions of the other Federal courts are almost equally divided. On the one side are *United States* v. *One Ford Coupe,* 43 F. (2d) 212; *United States* v. *One Studebaker,* 45 F. (2d) 430; *The Ruth Mildred,* 47 F. (2d) 336; *Colon* v. *Hanlon,* 50 F. (2d) 353; *United States* v. *One Buick Coupe,* 54 F. (2d) 800. On the other are *The Pilot,* 43 F. (2d) 491; *United States* v. *One Reo Coupe,* 46 F. (2d) 815; *The Daisy T,* 48 F. (2d) 370; *United States* v. *James Hayes,* 52 F. (2d) 977; *Maniscalco* v. *United States,* 53 F. (2d) 737; *United States* v. *American Motor Boat K-1231,* 54 F. (2d) 502. The list is not exhaustive. The courts of each group have invoked the Willis-Campbell Act (Act of Nov. 23, 1921, c. 134, 42 Stat. 222, 223, § 5), but have drawn opposing inferences from it. By that act, all laws relating to the

manufacture, taxation and traffic in intoxicating liquors and all penalties for their violation in force when the National Prohibition Act was adopted, were continued in force except such provisions as are "directly in conflict with the provisions of the National Prohibition Act." See *United States* v. *Stafoff*, 260 U. S. 477. The advocates of an implied repeal insist that there is a direct conflict between a statute whereby immunity for innocent lienors or owners is given as of right and a statute whereby immunity is on the footing of an act of grace. To this the retort is made by the opponents of repeal that the spheres of the two immunities are diverse and that the apparent conflict is unreal. Transportation within the United States is the sphere of the one, and importation from without the sphere of the other.

Of the four questions certified, those numbered two and three are adequately answered when we answer question number one.

The answer to question four may depend upon circumstances imperfectly disclosed in the certificate, and is not shown to be necessary. *White* v. *Johnson*, 282 U. S. 367.

The second, third and fourth questions are not answered, and the first question is answered "No."

MR. JUSTICE STONE took no part in the consideration and decision of this case.